The Never Ending Case Chapter 2. Amy Mensah is Amy Hiltner. It's her married name. This will be rather brief. Both of the issues that I raised on appeal are de novo. The first is the definition of operator under the underinsured statute NDCC 26.1-40-15.3. Typically, it's not defined in that statute, and as argued in the brief, as it not being defined, you should use the standard meaning of it, the definition from the dictionary. There are, as I pointed out in my brief, only three things that an operator can do with a vehicle. Steer it, accelerate it, or brake it. I'll give you a little bit of the back story. I did not sue Jeffries initially. I just sued Denault. Once the decision, the initial decision came down in Hiltner in our favor, I then sued Jeffries and obtained his policy limits and pursued him for underinsured benefits. As I said, there are only three things you can do with a vehicle. Steer it, accelerate it, or brake it. There are cases going both ways. The DUI cases, for instance, where somebody grabs the steering wheel, which I'm sure Mr. Morley will try to distinguish. There are just one case that I was able to find back when this was briefed where a elementary school student had accelerated a school bus with her foot, and that was a homeowner's case trying to determine whether there was that's operating. So I maintain that Jeffries, the front seat passenger, was operating the vehicle by accelerating it just before that third turn. It's up to you to decide, Denova, again, what the North Dakota Supreme Court would do, and I ask you to take, and you are permitted to, if not required to, take a look at the preamble to the statute, and that has been referenced a couple times in North Dakota state case law, that the purpose of the statute is to fully compensate injured people up to the extent of their coverage. The second part of the appeal, again, Denova, to you, is a summary judgment that was granted to Owner's Insurance Company by the surrogate judge assigned to this thing, or the retired judge assigned to this thing, and that, to me, is a misunderstanding of issue preclusion or misapplication of it. Mr. Morley argued to him, and he bought, the notion that I had previously, or Hiltner had previously argued, that Denault was primarily at fault, and now we changed our mind, and we want to point the finger at Jeffries. Not true. The initial closing argument, which was part of the record, as submitted to the judge way back when, I think in 2013, was that I proposed 60% on Denault, 20% on my client, Amy, and 20% on Jeffries. So from the beginning, I was saying that Jeffries had some fault. It's not as though I changed my mind in order to take advantage of something. The case law that I cited to the court specifically about that decision said that once I have prevailed, taking a contrary position, I can change my mind and hope to pursue another theory. I had not prevailed on the question of whether he was 20% at fault, rather he was 25% at fault. Is that sufficient then to preclude me from suing him at this point? I don't think so. We do have the previous case. The district court said that Denault was the sole operator. So now, unless your argument is that there can be a sole operator and then an interrupting operator, it seems like it's been decided in that, at least in that case. If I may ask, Judge, are you referring to his first opinion, or the one that was entered after remand by this court, that he said she was the sole operator? There are some inconsistencies in the second decision after remand by this court. In one place, he says she's the sole operator. Another place, he said until Jeffries pushed on her knee, she was a sole operator. Is it your position that you can have a sole operator and an interrupting operator? It's my position that you can say in one place of your findings and conclusions, she was a sole operator, and then later say that she was a sole operator up to the point that Mr. Jeffries pushed on her knee and made the car accelerate. I'd like to ask a question that's a little off topic on that. This was removed, correct, from the state court? Right. And everybody agrees it's $61,000. Was it not contested that it doesn't reach the minimum amount for- No, it was not contested. And in reviewing and preparing for the argument, I realize that. I recognize that. I also understand that this court can take the initiative when finding that the jurisdictional amount was not met and dismiss it and send it back to or not dismiss it, but send it back to state court. That's an option on your own motion or on motion by me. If you choose to do that on your own motion, I understand. Am I going to make that motion? No, because I would like to see Hiltner Mensa versus owners end at some point. But that's a good point. I recognized it late. I have not argued it. I have not raised it. But it's my understanding that the law is, you folks can do that if you choose to do that, rather than conferring jurisdiction when perhaps it's absent. Do you think we have authority to assume jurisdiction when it's absent? I don't think you do, frankly. I think this is a waste of time. I think the Mensa portion of this case is going to go back to district court in North Dakota State District Court and it will go on. Because I fully expect now that you've raised that, that this court will do on its own motion. Does that apply to both cases or just the second one? That only applies to the second one. The amount and controversy and other jurisdictional requirements were met in Hiltner. Good catch. You could have told us. I should have told you. Mr. Morley should have told you. Mr. Morley perhaps should not have removed it in the first instance and I should not have overlooked the fact that he removed it in the first place. Any of those things could have happened. None of them did, Judge. I'm sorry. Thank you. Okay. Anything further? I'll reserve whatever I have for my brother. All right. Very well. Mr. Morley, we'll hear from you. Thank you, Your Honor. And again, may it please the court, my name is Mike Morley. I represent the defendant in Applee this time, owner's insurance company. And we fully briefed the issue of Mr. Jeffries and we've raised a number of arguments. One that Ms. Mensah is barred by the doctrine of judicial estoppel from raising this question at this point. And Judge got it absolutely correct. And in my view, this should be a per curiam as far as that is concerned. His opinion was spot on. This case should be subject. Per curiam dismissing for lack of jurisdiction? Well, I don't, the jurisdiction is a fairly, you know, fairly broad, it can be fairly liberal, but I mean, if that's the best I can do, I'll take it. But I... What do you mean? It's fairly broad? Well, I mean, as far as your allegations in a complaint, as far as is it a removable versus non-removable? They're pretty specific dollar amounts, right? That are $61,718.67. Well, if that's all that they wanted, and then perhaps I stand corrected in removing it. So I guess I cannot stand here before this court and oppose if this court wishes to remand it back to state court for further proceedings. I think we're probably still at the same point though, as far as judicial estoppel and collateral estoppel, because Ms. Mensah would be a party in that state court case as she was in this case. And I think page 31 of our brief, and I'll quote, and I don't have a line number, but Hiltner in Hiltner 1 stated at paragraph 15, Hiltner agrees that NDCC section 32-03.2-02 limits her recovery against owners to the 55% fault allocated to denault, close quote. And then we cited to the Mensah appendix at 151. That was in the certification issue to the North Dakota Supreme Court where they had to decide the order of offsets for no fault versus fault and other fault. So we have clear positions of Amy Mensah and her attorney in Hiltner 1, the case that we just got done arguing, that her right, her recovery to UIM against owners is strictly limited to the fault assessable to Samantha denault, and that she cannot recover any UIM benefits based on Josh Jeffrey's fault. And we cited North Dakota law that says there can be motor vehicle accident and non-motor vehicle accident fault that combine to cause a single indivisible injury. And that's what occurred in this case. If you uphold the conclusions as far as Ms. Denault, she was the driver. The record is clear. The findings are clear that Mr. Jeffries was never an operator. He was never a driver of that vehicle. All he was was a drunken, obnoxious passenger who interfered with the appropriate operation of that vehicle. And Judge Erickson, in his conclusions, at conclusion one said Samantha Denault was the sole person in control of the vehicle and its operation. He goes on to state in conclusion 10, Denault's fault was greater than any of the passengers due to the following. Until Jeffries' interference, she was in exclusive control of the vehicle. She failed to take adequate measures to stop Jeffries from interfering with her operation. Mr. Miller never appealed that decision, that part of the decision in Hiltner 1. It's our position that those findings and those conclusions are either raised judicata or collateral estoppel on Mr. Miller and Ms. Mensah. In this case, they cannot relitigate them again because they were litigated the first time and he did not appeal from that decision. And so I won't bore the court with the elements of collateral estoppel, but we have it here. And Judge Wilson got it absolutely correct on judicial estoppel. In Hiltner 1, Ms. Mensah took an entirely inconsistent position to that that she's taking now because in Hiltner 1, she said her recovery against owners is strictly limited to the 55% fault against an alt. And I want the court to consider this as well. In both Judge Erickson's initial findings of fact and conclusions of law and his conclusions and findings following the remand from this case, the only damages that Ms. Hiltner ever sought to recover and have reduced to judgment against owners were the damages for her injuries based upon the fault of Ms. Denault. She clearly, in that first case, Hiltner 1, recognized that she is not entitled to recover UIM benefits based upon Mr. Jeffrey's fault, which was not in the operation of the vehicle, but was passenger interference fault, which Judge Erickson found and Judge Wilson concurred and affirmed. And so whether we're talking judicial estoppel, which we have here and we briefed it, or collateral estoppel, we have here and we briefed it, or the undisputed facts of what happened, they all lead back to the same conclusion. Mr. Jeffrey's was never the operator of that vehicle. He didn't own it. Ms. Denault owned it and she was operating. Everything was fine until he pushes down on her leg and causes that car to speed up around that last turn. He never grabbed the wheel. He never assumed the position of operator or driver. Ms. Denault never asked him to take over the driving or operation of that vehicle. He interfered and it's our position that his interference is a large, large percentage of what happened to cause Ms. Hiltner's injuries in this case. So I'm not necessarily advocating for a remand back to the state court on the basis of a jurisdiction. But I think that even if we go that far, a state court is still going to be bound by collateral and judicial estoppel because these issues have all been raised and litigated and argued and debated and pled in Hiltner 1. So we're going to arrive at the same point that we are here today. So I guess assuming that this court retains jurisdiction, it's our position. Judge Wilson got it absolutely correct whether based on judicial estoppel, collateral estoppel, or the undisputed facts of this case. Mr. Jeffries was never the driver or operator of that vehicle. He was the polar opposite. He interfered with the proper operation of that vehicle. But for that interference, we're not here today in either case. I've heard enough. Any further questions? Thank you very much. Thank you for your argument. Anything further, Mr. Miller? Very briefly. All right. I won't even take the poll 158. All right. Mr. Morley harped on what was discussed and decided in Hiltner 1, our first visit to this court. That was vacated and remanded. As you well know, Judge, you wrote the opinion. So whatever happened in Hiltner 1 didn't happen as far as Mensa versus owner is concerned. If we are remanded to the state court, which appears to be what should happen. Well, your brief says in the jurisdictional statement that we have jurisdiction because there was an amount of controversy of $75,000 or more. My brief concedes that Mr. Morley said in his motion to remove or in his removal papers that these are the kinds of cases that are routinely handled together. The first sentence of your statement of jurisdiction is jurisdiction was proper in the district court as there was complete diversity and the amount of controversy was more than $75,000. That's a misstatement on my part. I've come to know the truth since then. All right. Very well. And I apologize to the court a second time. Okay. I just wanted to make sure we weren't missing something there. You're not. All right. All right. Thank you. Thank you for your indulgence. All right. Thank you to both counsel.